UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVLIN MEDINA, as Next Friend and
Natural Guardian of A.M.,

    Plaintiff,

v.                                                  Case No:  2:13-cv-377-FtM-38DNF

THE CITY OF CAPE CORAL,
FLORIDA,

    Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability and Incorporated Memorandum of Law (Doc. #29) filed on July 15, 2014. Defendant filed a response and memorandum of law in opposition (Doc. #38) on August 11, 2014. This matter is now ripe for review.

### Facts

Plaintiff is the Next Friend and Natural Guardian of a child named A.M. (Doc. #29-2, at ¶ 2). Defendant is a municipal corporation organized and existing under the laws of the State of Florida, who offers various programs and services for children. Among these programs and services are before/after school programs and summer camps. (Doc. #3, at ¶ 8; Doc. #29 at 1). Since A.M. was approximately five years old,

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

she has participated in Defendant's school programs and summer camps.  (Doc. #29-2, at ¶ 9).

In 2012, A.M. was diagnosed with Type 1 diabetes.  (Doc. #29-1).  As a result of this diagnosis, A.M. requires various daily treatments, including careful monitoring of her blood glucose levels and insulin injections.  (Doc. #29-1).  While A.M. is able to monitor her glucose levels independently, she is unable to self-administer the necessary insulin injections.  (Doc. #29-2, at ¶ 6).  A.M. also maintains a glucagon kit for emergency situations where her blood glucose levels fall too low.  (Doc. #29-1).  Similar to the insulin injections, A.M. is unable to administer the glucagon kit independently.  (Doc. #29-2, at ¶ 6).

In anticipation of having A.M. participate in Defendant's 2012 summer camp, Plaintiff contacted Defendant's Risk Manager, Michael K. Quigley, informing him of her daughter's diagnosis and requesting that Defendant provide a staff member at the summer camp that would be able to administer A.M.'s insulin injections and, if needed, the glucagon kit.  (Doc. #29-2, at ¶ 10).  Defendant responded that it would do its best to accommodate A.M.'s needs and directed Plaintiff's attention to Defendant's existing diabetes accommodation policy.  (Doc. #29-2, at ¶ 11).  The existing diabetes accommodation policy provided that Defendant would assist in monitoring A.M.'s glucose levels.  (Doc. #29-2, at ¶ 11).  The policy further provided that if A.M.'s glucose levels fell outside the target range, Defendant agreed to take action such as providing fast-acting carbohydrates, contacting Plaintiff to take A.M. to her physician, and, in the case of more serious symptoms, calling paramedics to the scene.  (Doc. #29-2, at ¶ 11).

However, the existing policy also noted that injections would be provided only "[i]n the event of a dire emergency." (Doc. #38-1 at 3).

Plaintiff avers that because she is a single mother who works a full time job, preventing her from coming to take A.M. to the physician each time A.M.'s glucose levels fell out the target range, the Defendant's existing diabetes accommodation policy precludes A.M. from participating in Defendant's summer camps. (Doc. #29-2, at ¶ 16-17). To that end, Plaintiff asserts that the requested accommodation of providing someone who is able to administer A.M.'s insulin injections and glucagon kit is necessary to afford A.M. the opportunity to participate in Defendant's summer camps. (Doc. #29-2, at ¶ 17).

In this action, Plaintiff seeks a declaratory judgment that Defendant is in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1974 ("Rehabilitation Act"), 29 U.S.C. § 794. Plaintiff now moves for partial summary judgment on the issue of liability under the ADA and Rehabilitation Act.

**Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*. Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Canada,* 148 F. Supp. 2d 1316, 1320 (S.D.Fla.2001) (citing *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1315 (11th Cir. 2007).

**Discussion**

Plaintiff seeks partial summary judgment on the basis that there is no genuine issue of material fact as to Defendant's liability under Counts I and II, alleging violations of the ADA and Rehabilitation Act, respectively. (*See* [Doc. #29](#)). Plaintiff argues that each of the elements of a prima facie claim under the ADA and the Rehabilitation Act have been satisfied. ([Doc. #29 at 5-10](#)). First, Plaintiff avers that A.M. is a qualified individual with a disability, bringing her under the protection of both the ADA and the Rehabilitation Act. ([Doc. #29 at 5](#)). Second, Plaintiff contends that Defendant is discriminating against A.M. on the basis of her disability. ([Doc. #29 at 6](#)). To support this contention, Plaintiff cites to a Department of Justice consent order and settlement agreement for the proposition that "the Department of Justice considers the administration of insulin and glucagon injections to be a necessary accommodation for children with diabetes [at camps and summer programs]." ([Doc. #29 at 8](#)). As a result, Plaintiff avers that by failing to provide such an accommodation, Defendant is discriminating against A.M. on the basis of her disability.

In response, Defendant accepts several of Plaintiff's alleged material facts. For instance, Defendant does not dispute that A.M. is disabled and entitled to protection within the meaning of the ADA and Rehabilitation Act. ([Doc. #38 at 2](#)). Defendant, however, disputes Plaintiff's contention that the administration of insulin and glucagon injections is a necessary accommodation for children with diabetes at camps and summer programs. ([Doc. #38 at 6-7](#)). Instead, Defendant contends that there remains a genuine issue of material fact as to whether its existing diabetes accommodation policy is a reasonable accommodation that allows A.M. an opportunity to participate in

its summer camps and school programs. (Doc. #38 at 10). To support this position, Defendant cites to two additional Department of Justice settlement agreements for the proposition that camps and summer programs are not required to administer injections. (Doc. #38 at 11).

To establish a prima facie case of discrimination under the ADA and the Rehabilitation Act, Plaintiff must demonstrate that A.M. (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. *See* 42 U.S.C. § 12112(a); *see also Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (noting "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases"). Here, both parties agree that A.M. is a qualified disabled individual entitled to the protection of the ADA and Rehabilitation Act. (Doc. #29 at 5; Doc. #38 at 6). Therefore, there are no genuine issues of material fact as to the first two elements of Plaintiff's prima facie case. The Court's analysis will focus on the third element, i.e., whether A.M. was subjected to unlawful discrimination because of her disability.

When a plaintiff alleges that a public entity discriminated on the basis of a disability, the plaintiff can establish the third element by illustrating that the public entity refused to provide a reasonable accommodation for the disabled person. *Wolfe v. Florida Dep't of Corr.*, 5:10-CV-663-OC-PRL, 2012 WL 4052334, *5 (M.D. Fla. Sept. 14, 2012) (internal citations omitted). To illustrate that the public entity refused to provide a reasonable accommodation, the plaintiff must show she requested an accommodation or that the need for such an accommodation was obvious and the entity refused to

provide one. *Id.* However, "[t]he reasonableness of an accommodation is generally a question of fact not appropriate for resolution on summary judgment." *Id.*

The Supreme Court has defined reasonable accommodation to mean one that provides "meaningful access" to the program. *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985). In support of her Motion, Plaintiff contends the only way to provide A.M. meaningful access to Defendant's summer camps is through her requested accommodation. That is, Plaintiff asserts that Defendant must provide a staff member at each of its summer camps that is trained to administer insulin or glucagon injections to children with diabetes. As noted above, to support this contention, Plaintiff points the Court's attention to two different Department of Justice agreements.

First, Plaintiff directs the Court's attention to a consent order issued in a District of Massachusetts' case titled *Thompson v. Town Sports International, Inc.* (See Doc. #29-4). In citing the consent order issued in *Thompson*, Plaintiff correctly notes that the agreement directed the children's camp to adopt a diabetes policy, which included "monitoring and regulating glucagon and insulin administration." (Doc. #29-4). Second, Plaintiff directs the Court's attention to a settlement agreement derived after a complaint was filed with the Department of Justice against Rainbow River Child Development Center. (*See* Doc. #29-5). Similar to the *Thompson* consent agreement, the *Rainbow River Child Development Center* settlement agreement required Rainbow River to adopt a diabetes management policy that included agreeing to administer insulin and glucagon to the children under their care. (Doc. #29-5). Plaintiff seemingly interprets these two Department of Justice agreements as mandating camps to administer insulin

injections and assist with insulin pumps in order to provide meaningful access to their camps for children with diabetes.  (*See* Doc. #29 at 8).

In response, Defendant maintains that Plaintiff's requested accommodation is not reasonable.  (Doc. #38 at 7).   To support this contention, Defendant provides the Court with an affidavit from Dr. Barry Reiner, a board certified physician in pediatrics and pediatric endocrinology.  (Doc. #38-2).  Dr. Reiner affirms that "[t]he administration of insulin . . . injection[s] is a medical or nursing practice [that] should not be undertaken by laypersons."  (Doc. #38-2 at ¶ 21).  Dr. Reiner further notes that reinserting an insulin pump is a "complicated procedure [that] should only be performed by medical or nursing personnel specifically and comprehensively trained."  (Doc. #38-2 at ¶ 19).

In addition, Defendant directs the Court's attention to two additional Department of Justice agreements, which Defendant relied on in creating its existing diabetes accommodation policy.  (Doc. #38 at 11).  First, Defendant points to a settlement agreement between the Department of Justice and La Petite Academy, Inc.  (Doc. #38-6).  In the *La Petite Academy* agreement, La Petite Academy agreed to adopt a diabetes accommodation policy that provided for monitoring and testing children's glucose levels.  (Doc. #38-6 at 17-18).  However, the adopted policy did not mandate the administration of insulin or glucagon.  (Doc. #38-6 at 17-18).  Second, Defendant directs the Court's attention to a settlement agreement between the Department of Justice and Kindercare Learning Centers, Inc.  (Doc. #38-5).  Similar to the *Le Petite Academy* agreement, the *Kindercare* agreement mandates that Kindercare adopt a diabetes accommodation policy.  (Doc. #38-5 at 1).  The *Kindercare* agreement,

8

however, explicitly states, "[n]othing in this Agreement requires Kindercare to administer insulin shots to anyone." (Doc. #38-5 at 2).

Viewing this evidence in the light most favorable to Defendant, the Court finds there is a genuine issue of material fact as to whether Defendant's existing diabetes accommodation policy is a reasonable accommodation in accordance with the ADA and Rehabilitation Act. Although Plaintiff provides the Court with two Department of Justice agreements requiring the respective parties in those actions to administer insulin injections and assist with insulin pumps, neither of those agreements are binding on the Court. (Doc. #29-4; Doc. #29-5). Moreover, Plaintiff's Department of Justice evidence is contradicted by Defendant's own Department of Justice evidence, which does not require administration of insulin injections or assistance with insulin pumps. (Doc. #38-5; Doc. #38-6).

Outside of the Department of Justice evidence, Plaintiff also fails to note any further sources indicating that Defendant's existing diabetes accommodation policy is unreasonable. In contrast, Defendant provides the Court with Dr. Reiner's affidavit, asserting that Defendant's existing diabetes accommodation policy is reasonable based on the fact that further action, such as insulin injections, constitutes "a medical or nursing practice [that] should not be undertaken by laypersons." (Doc. #38-2). After considering the contradicting Department of Justice evidence and Dr. Reiner's testimony, the Court finds that the decision of whether Defendant's existing diabetes accommodation policy is a reasonable accommodation is a genuine issue of material fact best decided by a trier of fact. Therefore, partial summary judgment on the issue of liability is not appropriate at this time.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability and Incorporated Memorandum of Law (Doc. #29) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of August, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record