UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EVLIN MEDINA, as Next Friend and
Natural Guardian of A.M.

      Plaintiff,

v.                                     Case No:  2:13-cv-377-FtM-38DNF

THE CITY OF CAPE CORAL, FLORIDA,

      Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #42) filed on October 15, 2014. Plaintiff filed a Response in Opposition on November 14, 2014. (Doc. #48). Thus, the Motion is ripe for review.

## Background[2]

Plaintiff is the Next Friend and Natural Guardian of a child named A.M. (Doc. #29-2, at ¶ 2). Defendant is a municipal corporation organized and existing under the laws of the State of Florida, who offers various programs and services for children. Among these programs and services are before/after school programs and summer camps. (Doc. #3, at ¶ 8; Doc. #29 at 1). Since A.M. was approximately five years old, she has

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

[2] The majority of the factual background provided in this section come from the Court's August 22, 2014, Order on Plaintiff's Motion for Partial Summary Judgment (Doc. #39).

participated in Defendant's school programs and summer camps.  (Doc. #29-2, at ¶ 9). But in 2012, A.M. was diagnosed with Type 1 diabetes.  (Doc. #29-1).  As a result of this diagnosis, A.M. requires various treatments, including daily monitoring of her blood glucose levels and weekly maintenance of her insulin pump.  (Doc. #42-1).  While A.M. is able to monitor her glucose levels independently, she is unable to self-administer insulin injections, if needed.  (Doc. #29-2, at ¶ 6).

In anticipation of having A.M. participate in Defendant's 2012 summer camp, Plaintiff contacted Defendant's Risk Manager, Michael K. Quigley, informing him of her daughter's diagnosis and requesting that Defendant provide a staff member at the summer camp that would be able to administer A.M.'s insulin injections.  (Doc. #29-2, at ¶ 10).  Defendant responded that it would do its best to accommodate A.M.'s needs and directed Plaintiff's attention to Defendant's existing diabetes accommodation policy. (Doc. #29-2, at ¶ 11).  The policy provided that Defendant would assist in monitoring A.M.'s glucose levels.  (Doc. #29-2, at ¶ 11).  The policy further provided that if A.M.'s glucose levels fell outside the target range, Defendant agreed to take action such as providing fast-acting carbohydrates, contacting Plaintiff to take A.M. to her physician, and, in the case of more serious symptoms, calling paramedics to the scene.  (Doc. #29-2, at ¶ 11).  And after this litigation began, Defendant further modified its policy to specify that it would provide glucagon injections in the event of an emergency.  (Doc. #42-4).  But Defendant still refused to provide insulin injections, and instead specified that it would contact either emergency personnel or the child's legal guardian, depending on the situation.  (Doc. #42-4).

2

Plaintiff avers that because she is a single mother who works a full time job, preventing her from coming to take A.M. to the physician each time A.M.'s glucose levels fell out the target range, the Defendant's existing diabetes accommodation policy precludes A.M. from participating in Defendant's summer camps. (Doc. #29-2, at ¶ 16-17). To that end, Plaintiff asserts that the requested accommodation of providing someone who is able to administer A.M.'s insulin injections is necessary to afford A.M. the opportunity to participate in Defendant's summer camps. (Doc. #29-2, at ¶ 17). As a result, Plaintiff seeks a declaratory judgment that Defendant is in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act of 1974 ("Rehabilitation Act"), 29 U.S.C. § 794. Defendant now moves for summary judgment on the basis that insulin injections are not reasonable or necessary for A.M. to attend its programs and that it has reasonably accommodated A.M. in accordance with the ADA.

## Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether the moving party has met this initial burden, the Court

must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. *Whatley v. CNA Ins. Co.,* 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Canada,* 148 F. Supp. 2d 1316, 1320 (S.D.Fla.2001) (citing *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1315 (11th Cir. 2007).

## Discussion

Defendant moves the Court for summary judgment in its favor on two different grounds. First, Defendant seeks summary judgment on the basis that Plaintiff has failed to meet her burden of illustrating that providing insulin injections is a reasonable or necessary accommodation, as required by the ADA-discrimination framework. (Doc. #42 at 8-11). In support, Defendant points the Court's attention to deposition testimony that

illustrates "insulin injections are not necessary for A.M. to access [Defendant's] Programs." (Doc. #42 at 9). As Defendant explains, it has crafted an extensive diabetes policy, and "the undisputed evidence—from Plaintiff's own witnesses—shows that it is but a mere 'possibility' that A.M. could require an insulin injection while attending [Defendant's] Programs[;] even then, it would not be an emergency." (Doc. #42 at 10).

Second, and in the alternative, Defendant seeks summary judgment on the basis that it has accommodated A.M. in accordance with the ADA. (Doc. #42 at 11-14). To support this contention, Defendant again notes that it "made, prior to this lawsuit, a number of reasonable and appropriate modifications to its policies, practices, and procedures to ensure A.M. (and other children with diabetes) were able to enjoy [its] [p]rograms." (Doc. #42 at 11). Defendant also avers that it "continued to evaluate its policies even after this litigation began, expanding its diabetes accommodation policy to include administering glucagon injections in emergency situations, and assistance with insulin pumps as necessary." (Doc. #42 at 11).

In response, Plaintiff first asserts that "[t]here is a genuine issue of material fact as to whether [her] requested accommodation is reasonable and whether Defendant's denial of the accommodation discriminates against A.M. on the basis of her disability." (Doc. #48 at 4-7). In rebuttal to Defendant's argument, Plaintiff explains that just because Defendant's policy does not completely prevent A.M. from participating in its program, does not mean that Defendant has not violated the law. (Doc. #48 at 6). Specifically, Plaintiff points to the fact that Defendant's failure to administer insulin shots prevents A.M. from equally and meaningfully participating in Defendant's programs because while waiting for Plaintiff or emergency personnel to arrive to administer the insulin injection,

5

"A.M. would not be able to eat with the other participants and would, in effect, be temporarily excluded from the [p]rogram's activities." (Doc. #48 at 6).

Second, Plaintiff avers that there is a genuine issue of material fact as to whether her requested accommodation would impose an undue hardship burden on Defendant. (Doc. #48 at 7-10). That is, Plaintiff appears to interpret Defendant's argument that it has reasonably accommodated A.M. as an argument asserting that administering insulin injections would constitute an undue hardship. (Doc. #48 at 7-8). To rebut this argument, Plaintiff cites an extensive amount of Florida administrative code and statutes for the proposition that unlicensed, trained personnel are able to administer insulin injections. (Doc. #48 at 8-9). As such, Plaintiff concludes that her requested accommodation would not impose an undue hardship on Defendant because it would simply have to "take a few additional days to train Defendant's staff to administer insulin injections." (Doc. #48 at 10).

To establish a prima facie case of discrimination under the ADA and the Rehabilitation Act, Plaintiff must demonstrate that A.M. (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. *See* 42 U.S.C. § 12112(a); *see also Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (noting "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases"). Here, both parties agree that A.M. is a qualified disabled individual entitled to the protection of the ADA and Rehabilitation Act. (Doc. #42 at 8; Doc. #48 at 4). Therefore, there are no genuine issues of material fact as to the first two elements of Plaintiff's prima facie case. The Court's analysis will focus on the third element: whether A.M. was subjected to unlawful discrimination because of her disability.

6

When a plaintiff alleges that a public entity discriminated on the basis of a disability, the plaintiff can establish the third element by illustrating that the public entity refused to provide a reasonable accommodation for the disabled person. *Wolfe v. Florida Dep't of Corr.*, 5:10-CV-663-OC-PRL, 2012 WL 4052334, *5 (M.D. Fla. Sept. 14, 2012) (internal citations omitted). To do so, the plaintiff must show that she requested an accommodation or that the need for such an accommodation was obvious and the entity refused to provide one. *Id.* The Supreme Court has defined reasonable accommodation to mean one that provides "meaningful access" to the program. *Alexander v. Choate,* 469 U.S. 287, 300-01 (1985). Meaningful access, however, does not require the governmental entity to provide *every* requested accommodation. *A.M. ex rel. J.M. v. NYC Dep't of Educ.,* 840 F.Supp.2d 660, 679 (E.D.N.Y. 2012) aff'd sub nom., 513 F. App'x 95 (2d Cir. 2013) cert. denied sub nom., 134 S. Ct. 809, 187 L. Ed. 2d 597 (2013). Instead, "when an individual already has 'meaningful access' to a benefit to which he or she is entitled, no additional accommodation, 'reasonable' or not, need be provided by [the governmental entity]." *Id.*

Here, after viewing all inferences in favor of Plaintiff, the non-moving party, the Court finds that Defendant has provided A.M. with meaningful access to its programs. It is undisputed that Defendant has crafted an extensive diabetes policy to ensure it reasonably accommodates all disabled individuals suffering from diabetes. Under this policy, Defendant has agreed to take extensive measures to protect the health of those diagnosed with diabetes by, among other acts, monitoring the individual's glucose levels; providing fast-acting carbohydrates if necessary; administering a glucagon kit; and contacting various individuals, such as emergency personnel or a parent, if the situation

becomes dire. (Doc. #42-4).  Plaintiff takes issue with only the fact that this policy does not provide access to trained individuals who are able to administer insulin injections at the programs.  But the Court finds this single issue does not prevent A.M from enjoying meaningful access to Defendant's programs.

During her deposition, Plaintiff testified that it is "not often" and "rare" that A.M. needs the requested insulin injections.  (Doc. #42-1 at 56:8).  In fact, Plaintiff clarified that A.M. has only needed three insulin injections since her diagnosis in 2012.  (Doc. #42-1 at 56:15).  And in those situations, it was "absolutely not" an emergency "[b]ecause [A.M.'s] [insulin] pump ke[pt] her regulated."  (Doc. #42-1 at 58:15-16).  Moreover, Plaintiff could not remember a time in the last year when A.M.'s school nurse was required to give A.M. an insulin injection.  (Doc. #42-1 at 65:23-66:2).  Most notably, when asked whether she agreed that A.M. could attend the program utilizing the insulin pump without Defendant agreeing to administer injections, Plaintiff responded "no."  (Doc. #42-1 at 63:16-19).  When Defendant followed up by asking Plaintiff what makes her think A.M. could not go with just an insulin pump and not insulin injections, Plaintiff testified that it was "[b]ecause A.M. may need an injection of glucagon. . . ."  (Doc. #42-1 at 63:20-22).  But Defendant's latest version of its policy provides that it will give injections of glucagon if the situation calls for it.  (Doc. #42 at 3, n.4).

Plaintiff attempts to rebut these facts and argue that insulin injections are a necessary accommodation by noting that *if* A.M. ever needed an insulin injection, she would not be able to eat with the other participants and would, in effect, be temporarily excluded from the program's activities.  (Doc. #48 at 6).  The Court finds this argument unpersuasive. As noted above, Plaintiff testified that it is so rare that A.M. needs insulin

injections that she could not remember a single time A.M.'s school had to give her one. While it is true that A.M.'s time at Defendant's program could be different – i.e., the rare event warranting an insulin injection might occur – the fact remains that this is not likely. Even if A.M. did require an insulin injection at some point during the summer, the fact that she would have to miss a single meal with the other participants is not in any fashion demonstrative that she would be denied meaningful access to the program as a whole. There is no doubt that Plaintiff would prefer Defendant to have staff available at the program that could administer insulin injections.  But even without such staff available, A.M. is able to participate in and enjoy Defendant's program to the same extent as any other participant except for "rare" occasions when A.M. might miss a single meal. And in the Court's view, that constitutes meaningful access.

Finally, Plaintiff's attempt to analogize the Eleventh Circuit case of *Shotz v. Cates, 256 F.3d 1077 (11th Cir. 2001)*, to the instant action is equally unavailing.  In *Shotz*, two disabled individuals sued Levy County, Florida, alleging "that the wheelchair ramps and bathrooms at the courthouses impeded their ability to attend trials at the courthouse." 256 F.3d at 1080.  The *Shotz* Court found that the plaintiffs successfully stated a claim under the ADA because "[i]f the [c]ourthouse's wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that [the plaintiff's enjoyed meaningful access] to the courthouse." *Id.* Plaintiff attempts to analogize the *Shotz* case by highlighting the court's language that "an ADA violation 'does not occur only when a disabled person is completely prevented from enjoying a program, service, or activity.'" (Doc. #48 at 6 (citing *Shotz*, 256 F.3d at 1080)). In doing so, Plaintiff avers that "[a]lthough Defendant may not be completely preventing

9

A.M. from participating in the [p]rogram[], it is refusing a reasonable accommodation that would provide A.M. with equal access and enjoyment." (Doc. #48 at 7).

The Court disagrees. While it is true that an ADA violation does not occur solely when a disabled person is completely prevented from enjoying a program, it is also true that the ADA entitles disabled persons to "reasonable accommodations, not to optimal ones finely tuned to [their] preferences." *Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136, 146 (1st Cir. 2014). In other words, "'[m]eaningful access' . . . does not mean 'equal access' or preferential treatment." *A.M. ex rel. J.M.*, 840 F.Supp.2d at 680. Indeed, the ADA and Section 504 "seek[] to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance. . . . The[se] Act[s] do[] not . . . guarantee the handicapped equal results. . . .'" *Id.* (quoting *Choate*, 469 U.S. at 304). Therefore, "where alternative reasonable accommodations to allow for 'meaningful access' are offered or already in place," the plaintiff's claims must fail. *Id.* (citations omitted).

Here, the Court does not agree that insulin injections are a necessary accommodation. A.M. already maintains meaningful access to Defendant's program under Defendant's extensive diabetes policy. Although there is a "rare" chance that A.M. will require an insulin injection and will miss a single meal with the other participants, this rare chance is overshadowed by the fact that Defendant has crafted an extensive diabetes policy to accommodate A.M. that allows her to participate in nearly every aspect of its program, if not all aspects. This is illustrated by the fact that the only issue that Plaintiff has with Defendant's existing policy is that it does not provide for insulin injections. If Defendant altered its extensive diabetes policy further to add the

administration of insulin injections, it is true that A.M. would enjoy "equal access." But equal access is not the standard under the law, and Defendant has provided the Court with enough evidence to illustrate that there is no genuine issue whether it has reasonably accommodated A.M by providing her meaningful access. Consequently, summary judgment must be awarded in Defendant's favor.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #42) is **GRANTED**. All pending motions are **DENIED AS MOOT.** The Clerk is directed to **CLOSE** this action and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida, this 5th day of December, 2014.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record